UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| Tammi Harper<br>6 Taber St<br>Newport, Rhode Island, 02840 | : | Judge ________________ |
| | : | Case No. ______________ |
| Plaintiff, | : | |
| v. | : | |
| Hans Brinke, Sr.<br>502 Providence Dr.<br>Jefferson City, Tennessee, 37760 | : | |
| and | : | |
| Jimmie Brinke<br>502 Providence Dr.<br>Jefferson City, Tennessee, 37760 | : | |
| Defendants. | : | |

**COMPLAINT**

COMES NOW Plaintiff, Tammi Harper, by and through counsel, Vorys, Sater, Seymour, and Pease, LLP, and for her action against the Defendants complains and alleges as follows:

## I. Overview

1. This case arises from the actions of Defendant Hans "Jerry" Brinke ("Mr. Brinke"), who sexually molested Plaintiff Tammi Harper ("Tammi") on numerous occasions from 1983 to 1985. Mr. Brinke forced his stepdaughter Tammi, who was 13 to 15 years old at the time, to have intercourse with him, to perform oral sex on him, to masturbate him, and to perform acts of bestiality for his amusement.

2. The case also arises from the actions of Defendant Jimmie Brinke ("Mrs. Brinke"), who, after being informed of the sexual molestation, tried to convince Tammi that the sexual abuse couldn't have occurred as Tammi said it had occurred, told Tammi that someone other than Mr. Brinke must have been the perpetrator of some of the acts, tried to convince Tammi that the sex was consensual, told Tammi that she was to blame for the molestation, and convinced her that no legal remedy was available.

## II. Parties

3. Plaintiff, Tammi LeAnne Harper, 36, resides at 6 Taber St, Newport, Rhode Island, 02840. Tammi is a graduate of the University of Fairbanks in Alaska, where she earned degrees in psychology and elementary education. She later attended the Academy of Military Science at McGhee-Tyson Air National Guard Base in Tennessee, and was commissioned as an Officer of the Air National Guard in September 1996. Tammi flew with the Hawaii Air National Guard from November 1998 until November 2000, and also worked for Headquarters Pacific Air Forces as a Reservist on orders in the Exercise Plans Dept and on Active Duty Air Force from February 2000 until August 2001. Tammi is currently in the Inactive Ready Reserve and holds the rank of O-3/Captain. She completed her obligation to the military with an Honorable Discharge but remains a commissioned Officer. Tammi has two daughters, Amanda, 5, and Megan, 3.

4. Defendant Hans "Jerry" Brinke, Sr., 64, resides at 502 Providence Dr, Jefferson City, Tennessee, 37760. Mr. Brinke married Mrs. Brinke on or about May 1, 1976, and is Tammi's stepfather.

5. Defendant Jimmie Brinke resides at 502 Providence Dr., Jefferson City, Tennessee, 37760. Mrs. Brinke is Tammi's mother.

## III. Jurisdiction and Venue

6. Jurisdiction is proper under 28 U.S.C. § 1332 because Plaintiff and Defendants are residents of different states and the amount in controversy exceeds $75,000. Venue is proper because Defendants reside and own property in Jefferson county, Tennessee.

## IV. Applicable Law

7. Alaska Stat. § 09.10.065 (2001) states "(a) A person may bring an action at any time for conduct that would have, at the time the conduct occurred, violated provisions of any of the following offenses: (1) felony sexual abuse of a minor…."

8. Alaska Stat. § 11.41.434 (1983) defines felony sexual abuse of a minor:

> (a) An offender commits the crime of sexual abuse of a minor in the first degree if
>
> …
>
> (2) being 18 years of age or older, the offender engages in sexual penetration with a person who is under 18 years of age, and the offender is the victim's natural parent, stepparent, adopted parent, or legal guardian; or
>
> (3) being 18 years of age or older, the offender engages in sexual penetration with a person who is under 16 years of age, and (A) the victim at the time of the offense is residing in the same household as the offender and the offender has authority over the victim; or (B) the offender occupies a position of authority in relation to the victim….

## V. Factual Allegations

### A. Mr. Brinke sexually abused Tammi from 1983 to 1985.

9. In 1982, the Brinke family, consisting of Tammi's mother, Mrs. Brinke, Tammi's step-father, Mr. Brinke, their daughter, Tammi, and three other children,

relocated from their residence at Eielson Air Force Base, Alaska to Newby Rd., North Pole, Alaska. Mr. Brinke began to sexually abuse Tammi shortly afterwards.

10. Tammi was 13 to 15 years old at the time that the sexual molestation occurred.

11. Mr. Brinke was approximately 41 to 43 years old when he sexually molested Tammi.

12. Beginning in 1983, and continuing approximately until 1985, Mr. Brinke, on numerous occasions, sexually molested Tammi, showed her pornography, forced her to wear lingerie, and forced her to perform numerous sexual acts. These acts included forcing Tammi to have vaginal intercourse with him, to masturbate him, to use her mother's vibrator on herself, to perform oral sex on him and to engage in bestiality for his amusement.

13. Mr. Brinke planted the seeds of his subsequent sexual abuse by "accidentally" exposing himself to Tammi on numerous occasions prior to the first instance of abuse in 1983. Mr. Brinke either acted as though these incidents were accidental, or blamed Tammi for "walking in on him."

14. The first instance of sexual abuse occurred when Tammi was 13 years old. She came home from school, and was shocked to find that Mr. Brinke was not only at home, but was watching a pornographic film. Tammi tried to leave the room, but Mr. Brinke coerced her to stay and watch it with him.

15. Mr. Brinke made Tammi perform oral sex on him, saying at least once, "It's just like licking an ice cream cone."

16. Mr. Brinke encouraged young Tammi to engage in acts of bestiality for his sexual amusement. He made Tammi let the family dog lick her vagina. He instructed her several times on how to have intercourse with the dog. He said, "He'll put his paws right here on you and you'll really enjoy it."

17. Mr. Brinke forced Tammi to penetrate herself with carrots, saying, "Mom uses a cucumber, but for now you will use a carrot."

18. Mr. Brinke forced Tammi to masturbate him on numerous occasions. Tammi recalls having to do this in the bathroom sink, and remembers the gagging and repulsion she experienced from the sight and smell of his semen on her hand and wrist.

19. Mr. Brinke forced Tammi to perform sexual acts when she needed money. Tammi asked Mrs. Brinke for money, but Mrs. Brinke almost always directed Tammi to her stepfather. Mr. Brinke said on at least one occasion "if you want money, you know what you need to do."

**B. Mr. Brinke admitted having molested Tammi to Mrs. Brinke, but Mrs. Brinke did nothing to help her daughter.**

20. In 1989, the exact date and time being unknown, Tammi told her mother in the presence of Mr. Brinke about the fact that she had been repeatedly sexually abused by Mr. Brinke.

21. Mr. Brinke admitted to molesting Tammi in front of Tammi and Mrs. Brinke on this occasion.

22. Mr. Brinke admitted that he had sexually abused Tammi over a two year period, and, later on, specifically admitted to Mrs. Brinke four separate occasions on which he had sexual intercourse with Tammi.

23. Mrs. Brinke convinced her daughter to remain silent of the abuse, saying, "it wasn't that bad, he didn't mean to, it's family business…."

24. From 1989 to the present, Mrs. Brinke has repeatedly characterized Mr. Brinke's molestation of Tammi as "an affair within the home."

25. After the abuse, Mr. Brinke spent time employed as a Corrections Officer at a prison in Kenai, Alaska. Mrs. Brinke told Tammi that Mr. Brinke's punishment for molesting Tammi was "going to work every day and seeing the people on the other side of the bars and knowing that he could be there."

26. On July 5, 2006, Tammi received a magazine clipping in the mail, sent from Mrs. Brinke, entitled "A Forgiving Heart." This article asked, "Does your blood boil every time you see the next-door neighbor who chopped down a magnificent oak tree that shaded your deck for years?" It answered the question, stating, "You may want to let it go." This article presumably compared two years of repeated childhood sexual molestation to chopping down a "magnificent oak tree" and warned of the dangers of cortisol, a stress-related hormone. A true and accurate copy of the article is attached as Exhibit A.

27. On July 5, 2006, Tammi also received a short note from Mrs. Brinke claiming Tammi needed to forgive Mr. Brinke because "it is so dangerous for [Tammi] to be so hostile about events that are over and can't be changed." A true and accurate copy of the note is attached as Exhibit B.

28. From 1989 to the present, Mrs. Brinke, alternatively, has tried to convince Tammi that much of the sexual abuse never occurred, that it did occur but that someone other than Mr. Brinke was the perpetrator of many of the acts, that it did occur

with Mr. Brinke but that it was consensual, that it did occur with Mr. Brinke but was justified because of the way Tammi dressed, and that it did occur with Mr. Brinke but "was not a big deal" and should be forgotten about and forgiven.

29. Mrs. Brinke convinced Tammi that she had no legal remedy available to her.

**C. Mr. Brinke and Mrs. Brinke admitted the fact that Mr. Brinke molested Tammi to numerous family members.**

30. On or about March 20, 2004, at Tammi's former residence in San Diego, California, Tammi informed Heath and Tana Brinke, Tammi's younger brother and his spouse, of the nature and extent to which Mr. Brinke molested Tammi during the 1983 through 1985 time period.

31. On or about March 21, 2004, at Mr. and Mrs. Brinke's home in Jefferson City, Tennessee, Heath and Tana Brinke confronted Mr. and Mrs. Brinke regarding the molestation.

32. Mr. Brinke admitted having molested Tammi to Heath and Tana Brinke during this conversation.

33. On or about March 21, 2004, during this conversation with Health and Tana Brinke, Mr. Brinke asserted that the various acts of sexual molestation that took place between himself and then 13 to 15 year old Tammi were "a consensual affair."

34. On or about July 4, 2006, during a telephone conversation, Mr. Brinke admitted that he sexually molested Tammi to his cousin, Evelyn Kuriko.

### D. Tammi has suffered severe psychological and emotional damage due to the sexual molestation.

35. Tammi was not aware of the enormous psychological and emotional injury that Mr. Brinke's sexual molestation had caused until very recently.

36. Because of the psychological distress caused by the abuse, the coping mechanisms that resulted, and Mrs. Brinke's brainwashing, Tammi was unable to perceive or know the nature and extent of her psychological and emotional injuries.

37. These manifestations continued to operate on Tammi long after the sexual abuse ended, preventing her from perceiving her psychological and emotional injuries and the connection between them and her stepfather's earlier acts, and causing her to avoid psychological counseling or seeking legal advice.

38. During the spring of 2006, Tammi began to understand that the sexual molestation was terribly wrong, that it was not her fault, and that it had had an enormous, negative impact on her life and caused severe emotional and psychological damage. She began investigating therapeutic alternatives and the possibility of legal redress at that time.

39. On or about May 4, 2006, Tammi began attending counseling in attempt to ameliorate the harm caused by the sexual molestation.

40. Tammi is now unable to work due to the psychological trauma that she has sustained. Tammi is psychologically incapable of leaving her children in the care of daycare workers because she fears that Amanda and Megan could become victims as well. This has prevented her from working since shortly after giving birth. Were it not for the damage caused by Mr. Brinke's sexual abuse, Tammi would have been able to

return to work when her first daughter became old enough for daycare, on or about January 1, 2002.

41. Tammi has not worked since August 26, 2001. She was earning approximately $60,000 a year at that time. Had Tammi been psychologically capable of resuming her military career, she would earn approximately $95,000 a year today.

42. Tammi also suffers from sleepless nights, flashbacks of the sexual abuse that occurred, and sexual dysfunction. The molestation has affected her emotional well-being and the well-being of her marriage. She suffers from anger, depression, emotional distress, mental anguish, and a sense of abandonment. The sexual molestation has affected every aspect of her life.

43. Tammi has suffered a loss of faith due to the sexual molestation. She has trouble understanding why a just God would allow these things to happen to an innocent, trusting girl, and her lack of faith causes her severe mental anguish.

44. Tammi has had difficulty having a normal, healthy sex life as an adult due to the molestation that took place during her childhood. Prior to her marriage, she engaged in one night stands rather than long-term relationships. Sex in a loving relationship causes her mental anguish because her stepfather "loved" her and she hated the things that he did to her. Tammi has suffered the loss of enjoyment of life due to the sexual abuse.

45. Tammi lives in pain throughout her day-to-day life because Mr. Brinke sexually molested her.

## VI. First Cause of Action – Mr. Brinke – felony sexual abuse of a minor

46. Plaintiff realleges the foregoing allegations as if fully rewritten herein.

47. From approximately 1983 to 1985, Mr. Brinke engaged in repeated acts of sexual penetration and other sexual acts with Tammi.

48. Mr. Brinke was 41 to 43 years old and was Tammi's stepfather at the time that he sexually penetrated her and engaged in other sexual acts with her.

49. Tammi was 13 to 15 years old at the time that Mr. Brinke sexually penetrated her and engaged in other sexual acts with her.

50. Tammi and Mr. Brinke resided in the same household at the time that he sexually molested her and Mr. Brinke was in a position of authority over Tammi at this time.

51. Tammi was severely damaged and suffered severe emotional distress, mental anguish, mental suffering, and the loss of enjoyment of life because Mr. Brinke sexually penetrated her and sexually molested her in various other ways.

## VII. Second Cause of Action – Mr. Brinke – intentional infliction of emotional distress

52. Plaintiff realleges the foregoing allegations as if fully rewritten herein.

53. Mr. Brinke's conduct, including sexually penetrating Tammi and forcing her to perform other sexual acts from 1983 to 1985, was intentional.

54. Mr. Brinke's conduct was extreme or outrageous.

55. Mr. Brinke's conduct directly and proximately caused severe emotional distress or bodily harm to Tammi.

## VIII. Third Cause of Action – Mr. Brinke – assault and battery

56. Plaintiff realleges the foregoing allegations as if fully rewritten herein.

57. Mr. Brinke's conduct, including sexually penetrating Tammi and forcing her to perform other sexual acts from 1983 to 1985, was intended to cause a harmful or offensive contact with Tammi.

58. On numerous occasions, Tammi was put in imminent apprehension of such harmful or offensive contact.

59. On numerous occasions, an offensive contact resulted from Mr. Brinke's actions.

## IX. Fourth Cause of Action – Mrs. Brinke – intentional infliction of emotional distress

60. Plaintiff realleges the foregoing allegations as if fully rewritten herein.

61. Mrs. Brinke's conduct, which included ignoring Tammi when she reported the sexual abuse, asserting that the sexual abuse was "consensual," asserting that the sexual abuse was Tammi's fault, and convincing young Tammi that there was no means of legal redress available, was intentional.

62. Mrs. Brinke's conduct was extreme or outrageous.

63. Mrs. Brinke's conduct directly and proximately caused severe emotional distress or bodily harm to Tammi.

## X. Fifth Cause of Action – Mrs. Brinke – negligent infliction of emotional distress

64. Plaintiff realleges the foregoing allegations as if fully rewritten herein.

65. As Tammi's mother, Mrs. Brinke owed Tammi a pre-existing duty to protect her daughter.

66. Mrs. Brinke breached that duty by ignoring Tammi when she reported the sexual abuse, asserting that the sexual abuse was "consensual," asserting that the

sexual abuse was Tammi's fault, and convincing young Tammi that there was no means of legal redress available.

67. This breach of pre-existing duty was negligent.

68. Mrs. Brinke's breach of the pre-existing duty that she owed to Tammi directly and proximately caused Tammi to suffer severe emotional distress.

## XI. Prayer for relief

69. Plaintiff realleges the foregoing allegations as if fully rewritten herein.

70. Defendants' actions have caused damage to Plaintiff, including, but not limited to, severe emotional distress, mental anguish, loss of faith in God, loss of sleep, sexual dysfunction, loss of enjoyment of life, inability to work, loss of income, and other pain and suffering.

71. WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

a. Damages to be awarded to Plaintiff in an amount in excess of $75,000 on each claim, the exact amount to be determined at trial.

b. An award of punitive damages to be awarded to Plaintiff.

c. Awards of pre-judgment interest, costs, and attorney's fees to be awarded to Plaintiff.

d. For such other and further relief as the Court deems just and proper.

Case 3:06-cv-00412 Document 1 Filed 10/30/06 Page 12 of 19 PageID #: <pageID>

Respectfully submitted,

Glenn V. Whitaker (0018169)
Michael L. Rich (0077469)
Joseph W. Harper (0079902)
Vorys, Sater, Seymour and Pease LLP
Suite 2000, Atrium Two
221 East Fourth Street
Cincinnati, OH 45202
Telephone: (513) 723-4000
Facsimile: (513) 723-4056
Trial Attorneys for Plaintiff Tammi Harper

Of Counsel:

G. Wilson Horde (001997)
Kramer Rayson LLP
Suite 2500, First Tennessee Plaza
P.O. Box 629
Knoxville, Tennessee 37901-0629
(865) 525-5134

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable herein.

Glenn V. Whitaker

**PRAECIPE TO THE CLERK**

Please serve by certified U.S. Mail, return receipt requested, a copy of the Summons and Complaint upon each of the Defendants at their address listed in the caption of the Complaint.

Glenn V. Whitaker

# A FORGIVING HEART

**Does your blood boil every time you see the next-door neighbor who chopped down a magnificent oak tree that shaded your deck for years?**

You may want to let it go. A growing body of evidence suggests that forgiving others may be good for your own heart. A recent study at the University of Tennessee shows that forgiveness can lower blood pressure and heart rate. "Holding a grudge is hard work; it places a lot of demand on the heart," says Kathleen Lawler-Row, a psychology professor at the University of Tennessee and the study's lead investigator. "Choosing to forgive an offender reduces anger, depression, and anxiety, all of which affect cardiovascular health."

Another study of couples with troubled marriages found higher levels of the stress hormone cortisol in those who said they could not forgive their spouses over an issue or problem, says the study's author, Everett L. Worthington Jr., a psychology professor at Virginia Commonwealth University and executive director of A Campaign for Forgiveness Research.

Dr. Richard A. Stein, director of preventive cardiology at Beth Israel Medical Center in New York, and an American Heart Association spokesman, discusses this mind-body connection in his new book, *Outliving Heart Disease*. One of the guidelines he gives for preventing and treating heart disease is to know how >> on 264

thoughts and feelings affect health. Negative emotio[n]s may promote hardening of the arteries and even trigger a heart attack. Stein says that reducing hostility, anger, stress, and depression can lower the occurrence of cardiac problems.

Forgiveness, alas, doesn't always come easily. One method, developed by Worthington, uses the acrony[m] REACH to teach people how to forgive. How it work[s]:

- **RECALL THE HURT** Try to remember the hurt objectively without feeling victimized.
- **EMPATHIZE WITH THE PERSON WHO HURT YOU** Try to understan[d] the other person's perspective and feel compassion toward the offender.
- **ALTRUISM** Realize we are all alike in that we have hur[t] others too. When we are forgiven, we experience freedom and gratitude. Give the gift of forgiveness t[o] the person with whom you now empathize.
- **COMMIT PUBLICLY TO FORGIVE** Forgiveness becomes real when you say it aloud or write it in a letter rather th[an] keep it private (you don't have to deliver the letter).
- **HOLD ONTO FORGIVENESS** When painful memories resurface, it doesn't mean you're still holding a grudge. Remind yourself that you've forgiven that person and have moved on. BETSY DRU TECCO

Exhibit A

Case 3:06-cv-00412 Document 1-4 Filed 10/30/06 Page 15 of 19 PageID #: <pageID>

Tammi,

This isn't for us – neither of us! It's for you. From the beginning you have misunder-stood what I meant by forgiveness. This explains it and why it is so danger-ous for you to be so hostile about events that are over & can't be changed.

Love Always
Mother

USGA For the good of the game

Exhibit B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

---

## CERTIFICATE OF GOOD STANDING

I, James Bonini, Clerk of this Court, certify that

**GLENN VIRGIL WHITAKER, BAR #0018169,**

was duly admitted to practice in this Court on

December 4, 1980

and is in good standing as a member of the Bar of this Court.

Dated at Cincinnati, Ohio on September 29, 2006.

James Bonini

**JAMES BONINI, CLERK**

By: Emily B Hiltz

Emily Bromwell Hiltz, Deputy Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

---

## CERTIFICATE OF GOOD STANDING

I, James Bonini, Clerk of this Court, certify that

**JOSEPH WILLIAM HARPER, BAR #0079902,**

was duly admitted to practice in this Court on

February 3, 2006

and is in good standing as a member of the Bar of this Court.

Dated at Cincinnati, Ohio on September 29, 2006.

James Bonini
**JAMES BONINI, CLERK**

By: Emily B. Hiltz
Emily Bromwell Hiltz, Deputy Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

---

## CERTIFICATE OF GOOD STANDING

I, James Bonini, Clerk of this Court, certify that

**MICHAEL L RICH, BAR #0077469,**

was duly admitted to practice in this Court on

August 21, 2003

and is in good standing as a member of the Bar of this Court.

Dated at Cincinnati, Ohio on September 29, 2006.

James Bonini
**JAMES BONINI, CLERK**

By: Emily B Hiltz
Emily Bromwell Hiltz, Deputy Clerk